IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GEORGE SMALLWOOD, *et al.*,          )
     Plaintiffs,                              )
                     )
        v.                                          )          Civil Action No. 3:23cv67 (RCY)
                     )
BUILDERS MUTUAL                           )
INSURANCE COMPANY, *et al.*,          )
     Defendants.                            )
                     )

## MEMORANDUM OPINION

This is a declaratory judgement action brought by Plaintiff George Smallwood ("Plaintiff" or "Smallwood"), seeking a determination of insurance coverage.[1]  The case is before the Court on Plaintiff's Motion to Remand Pursuant to Rule 12(b)(1) (ECF No. 38) and Defendant Builders Mutual Insurance Company's ("Builders Mutual") Motion to Dismiss the Amended Complaint (ECF No. 18).  The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court will deny Plaintiff's Motion to Remand and grant Builders Mutual's Motion to Dismiss.

## I. BACKGROUND

### A.  Relevant Parties and the Builders Mutual Policy

On January 29, 2016, Kelley & Associates Construction Management, Inc. ("Kelley & Associates") and David Jordan, LLC ("DJ LLC") entered into a joint venture agreement for the

---

[1] The case was initially brought by Smallwood against Builders Mutual Insurance Company, BD Joint ventures, LLC, VA Express, LLC, Williams Contracting, Inc., Paul Stevens, Kelley & Associates Construction Management, Inc., and David Jordan LLC.  However, pursuant to this Court's order on August 10, 2023, all parties other than Builders Mutual Insurance Company have now been realigned as plaintiffs.  Order, ECF No. 13.  Pursuant to that same order, Smallwood was permitted to amend his Complaint to include claims against ACE Property & Casualty Co. and Alsop Trucking, Inc. *See id.*

construction of an Express Oil Change in Mechanicsville, Virginia (hereinafter, the "Express Oil Change"). Am. Compl. ¶ 51, ECF No. 14.[2] The joint business venture was formed as BD Joint Ventures, LLC, d/b/a BD Mechanicsville, JV ("BD JV"). *Id.* That same month, BD JV entered into a partnership agreement with Williams Contracting, Inc. ("Williams Contracting"), also for the sole purpose of constructing the Express Oil Change. *Id.* ¶ 54.[3] The partnership agreement outlined the parties' respective duties with respect to the construction of the Express Oil Change. *Id.* ¶¶ 54–55. Specifically, BD JV was responsible for "project management, construction management and other on-site supervision and other responsibilities as required." Am. Compl. Ex. 6 ("Partnership Agreement") 2, ECF No. 14-6.[4] Williams Contracting, on the other hand, was responsible for "maintaining Virginia Contractor License, 2701018734A, Builders Risk Insurance and other responsibilities as required." *Id.* Per Plaintiff, other responsibilities under this agreement apparently included "obtaining a General Liability Insurance Policy (GCL policy) to cover Williams [Contracting], Kelley [& Associates], BD JV, VA Express [Holdings, LLC], David Jordan, and Mr. Robley[5], so that (1) Mr. Robley could obtain the appropriate permits and (2) the parties could begin construction of the Express Oil facility." Am. Compl. ¶ 56. However, a review of the Partnership Agreement cited by Plaintiff reveals no explicit reference to any such requirement. *See generally* Partnership Agreement.

---

[2] Kelley & Associates provides project management services for construction projects, while DJ LLC is a limited liability company that was created to enter into joint venture agreements with Kelley & Associates to build Express Oil Change facilities. Am. Compl. ¶¶ 8–9.

[3] According to the Amended Complaint, Williams Contracting, Inc. is a "Virginia general contracting corporation." Am. Compl. ¶ 12.

[4] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

[5] "Mr. Robley" refers to Robley Bates, the Owner of VA Express Holdings, LLC. Am. Compl. Ex. 7 ("Notice to Proceed") 1, ECF No. 14-7. Mr. Robley, on behalf of VA Express Holdings, LLC, issued a Notice to Proceed with the construction of the Express Oil Change upon receipt of the Certificate of Insurance from Brown & Brown. *See infra.*

Roughly two months later, Williams Contracting's insurance broker—Brown & Brown Insurance Agency of Virginia—issued a Certificate of Insurance ("COI") to VA Express Holdings, LLC.[6]  Am. Compl. ¶ 57.  This COI identified a commercial general liability insurance policy issued by Builders Mutual—Builders Policy No. CPP 0062711, Commercial Package Policy (the "Policy")—and listed "the named insured as Williams Contracting, Inc. for an Express Oil Change in Mechanicsville, VA Project."  *Id.*  The COI also further stated in the "Description of Operations/Locations/Vehicles" section that certain entities, including "VA Express Holdings, LLC, BD Mechanicsville JV, . . . Kelley & Associates . . . and David Jordan LLC . . . are named as additional insureds as respects general liability as required by written contract."  *Id.* ¶ 57 n.5; Am. Not. Removal Ex. B ("Certificate of Insurance") 32,  ECF No. 11-1.  Importantly, though, the COI provides that "if the Certificate Holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed."  *Id.*  Moreover, the COI explicitly discloses that it "is issued as a matter of information only and confers no rights on the certificate holder . . . [and] does not amend, extend, or alter the coverage reported by the policies described below."  *Id.*

While the COI provides useful context, the bulk of the information relevant to this matter comes from the Builders Mutual Policy itself.  The Policy provided coverage from April 1, 2016, to April 1, 2017.  Mem. Supp. Mot. Dismiss Ex. 1 ("Builders Mutual Pol'y") 8, ECF No. 19-1.[7] In terms of *who* the Policy covered, Williams Contracting, Inc. was the only entity identified as a

---

[6] VA Express Holdings, LLC owned the property where the Express Oil Change was to be built, Am. Compl. ¶ 52, and where Plaintiff ultimately suffered his injuries, *see id.* ¶¶ 17–41.

[7] Builders Mutual attached a copy of the Policy to its Memorandum in Support of Its Motion to Dismiss.  *See* Builders Mutual's Mem. Supp. Mot. Dismiss Ex. 1 ("Builders Mutual Pol'y"), ECF No. 19-1.  The Court may consider this document in conjunction with its Rule 12(b)(6) analysis because the Policy itself is "integral to and explicitly relied on in the [C]omplaint," and Plaintiff has not challenged its authenticity.  *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *see Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips*, 190 F.3d at 618).  Indeed, in his opposition memorandum, Plaintiff attached a largely identical version of the Policy as well.  *See* Pl.'s Mem. Opp'n Builders Mutual's Mot. Dismiss Ex. 4, ECF No. 21-4.  Defendant did not object to this version of the Policy.  The Court will therefore consider excerpts from each version throughout.

"Named Insured" in the General Liability Declarations of the Policy.  *See id.*  In fact, Williams Contracting is the only "Named Insured" identified in the entire Policy.  *See generally id.*  Moreover, there are no endorsements identifying any other entities as insureds.  *See generally id.*

Moving on, the Policy contains various provisions further elucidating the contours of its coverage.  A few of the most relevant provisions are excerpted below:

**Commercial General Liability Coverage Form**

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

* * *

**Section II – Who Is An Insured**

1.  If you are designated in the Declarations as:

   a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b.  A partnership or joint venture, you are an insured.  Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c.  A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

   d.  An organization other than a partnership, joint venture, or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

   * * *

2.  Each of the following is also an insured:

4

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture, or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

\* \* \*

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

\* \* \*

**Additional Insured Endorsement**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Section II - WHO IS AN INSURED is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a written contract or written agreement that such person or organization be added to your policy, but only with respect to liability for "bodily injury" or "property damage" caused by "your work" performed for that additional insured and included in the "products-completed operations hazard".

When the named insured is required to add an additional insured on this policy, the written contract or written agreement must be:

1.  Currently in effect or becoming effective during the term of this policy;

2.  Executed prior to a "bodily injury" "occurrence" or "property damage" "occurrence" to which this insurance would apply; and

3.  Between a Named Insured and the additional insured

\* \* \*

**Additional Insured Endorsement**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

5

Except as otherwise stated in this endorsement, the terms and conditions of the policy apply to the insurance stated below.

The following is added to the Commercial General Liability Coverage Form, Section II – WHO IS AN INSURED

> \* \* \*

10. Any person or organization other than an architect, engineer or surveyor, which requires in a "work contract" that such person or organization be made an insured under this policy.  However, such person or organization shall be an insured only with respect to covered "bodily injury", "property damage", "personal and advertising inury" caused, in whole or in part, by:

> a. Your acts or omissions; or

> b. The acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured(s) only at the location designated by the "work contract"

> \* \* \*

**Section V – Definitions**

The following is added:

23.  "Work contract" means a written agreement into which you enter for work performed by you or on your behalf.

Builders Mutual Pol'y 33, 38–39, 138, 146–47.  To reiterate, Williams Contracting, Inc. is the only "Named Insured" identified anywhere in the Policy.  *See generally id.*

**B.  Plaintiff's Injury and the ACE Policy**

Kelley & Associates hired Plaintiff to deliver construction materials for the construction of the Express Oil Change.  Am. Compl. ¶ 17.  On June 16, 2016, Paul Edward Stevens ("Stevens") was operating a skid steer loader loaded with rebar when a portion of the rebar load struck and knocked Plaintiff to the ground.  *Id.* ¶¶ 38–43.  Plaintiff suffered multiple fractures as a result.  *Id.* ¶ 43.  At the time of Plaintiff's injuries, Stevens was an agent or employee of BD JV and/or Kelly & Associates.  *Id.* ¶ 13.  Plaintiff's injuries allegedly occurred when he was offloading an Alsop

Trucking, Inc. ("Alsop") tractor trailer.  *Id.* ¶ 85.  Plaintiff Smallwood provided same-day notice of his injuries to Kelley & Associates.  *Id.* ¶ 45.

At the time of the incident, the Alsop tractor trailer was covered by a Commercial Auto Policy, Policy No. H08673494, issued by ACE Property & Casualty Insurance Company ("ACE"), to provide liability and underinsured motorist coverage for a tractor trailer (the "ACE Policy").  *Id.* ¶ 16; ACE Policy 56–57.  Alsop Trucking, Inc. is the Named Insured identified in the ACE Policy.  *See* ACE Policy 8, 28–29.

## C.  State Court Proceedings

In view of the instant Motion to Remand, a brief summary of the state court proceedings in this matter is appropriate.

Plaintiff first initiated a personal injury action—*Smallwood v. Kelley & Associates, et al.* ("*Smallwood I*"), Law Action No. CL-18-1833—in the Circuit Court for Chesterfield County against Stevens, Kelley & Associates, and others, for personal injuries sustained in the subject incident.  Am. Compl. ¶ 46.  Thereafter, Plaintiff non-suited one of the parties that was initially named as a defendant and filed an Amended Complaint in *Smallwood I* on August 31, 2020.  *Id.* ¶ 47.  During the course of that suit, questions arose regarding Builders Mutual's duty to defend and indemnify.  *Id.* ¶¶ 47–50.  As a result, the parties to that action requested a stay of the matter, and Plaintiff initiated the present declaratory judgment action ("*Smallwood II*") on December 22, 2022, in the Circuit Court of Henrico County, Virginia, against Builders Mutual and others.  *See id.* ¶¶ 1, 46–48; Not. Removal Ex. 1 ("Compl.") ¶¶ 1–6, 8, 37–38, ECF No. 1-1.  Following removal, Plaintiff amended his Complaint to include an additional declaratory judgment/reformation claim against ACE.  *See* Am. Compl. ¶¶ 6–7

With this action, Plaintiff seeks (1) a declaration that "Builders [Mutual] provide not only a defense but also insurance for [Plaintiff's] injuries as a third-party beneficiary to the [Policy]";

and (2) a declaration that "the [ACE Policy] minimum limits of coverage of $750,000 or more are available for Mr. Smallwood or, in the alternative, Plaintiff requests that this Court reform the ACE Policy to uninsured or underinsured no less than $750,000 as per the Policy and pursuant to Virginia law and award costs and such other relief as the Court deems just and proper." Am. Compl. ¶¶ 82, 92.[8]

## II. PROCEDURAL HISTORY

As outlined above, Plaintiff initially brought this suit for declaratory judgment on December 22, 2022, in the Circuit Court for the County of Henrico, Virginia. Am. Compl. ¶ 46. Builders Mutual subsequently removed the action to this Court, *id.* ¶ 1, and simultaneously filed a Motion to Realign the Parties, *see* Mot. Realign Parties, ECF No. 2.[9]  On February 3, 2023, Plaintiff filed a Motion to Amend the Complaint. Mot. Amend Compl., ECF No. 5. Specifically, Plaintiff sought to amend his Complaint to name Alsop and ACE, Alsop's commercial automobile insurance carrier, as additional defendants. *Id.*  This Court granted both motions on August 10, 2023. *See* Order, ECF No. 13.

Soon thereafter, Builders Mutual filed its Motion to Dismiss and Memorandum in Support thereof on August 24, 2023. ECF Nos. 18, 19. Plaintiff[10] filed his Memorandum in Opposition to Builders Mutual's Motion to Dismiss on September 5, 2023. ECF No. 21. Builders Mutual filed its Reply on September 11, 2023. ECF No. 22. ACE then filed its Motion to Dismiss and Memorandum in Support thereof on October 26, 2023. ECF Nos. 36, 37. Plaintiff filed his Motion

---

[8] It also appears that Plaintiff filed suit in the Circuit Court for the County of Henrico, Virginia against Brown & Brown Insurance. *See* Pl.'s Mem. Supp. Mot. Remand 5, ECF No. 39. That action alleges negligence and breach of contract of the agent and insurance agency. *See id.* The Court does not deem that suit relevant for present purposes.

[9] Briefly, the Motion to Realign parties sought to realign the parties "according to the actual issue[] in controversy," Mem. Supp. Mot. Realign 4, ECF No. 3—namely, whether the Builders Mutual Policy provides insurance coverage benefits to any of the parties to this action. *See id.* at 4–6.

[10] Although the Court previously realigned the parties, none of the other now-plaintiffs have appeared yet in this action. Smallwood therefore remains the sole operative plaintiff.

to Remand to State Court and Memorandum in Support thereof on November 8, 2023,  ECF Nos. 38, 39, and then a Memorandum in Opposition to ACE's Motion to Dismiss on November 15, 2023, ECF No. 39.  ACE filed its Reply on November 21, 2023.  ECF No. 44.  Builders Mutual and ACE filed their respective Memorandums in Opposition to Plaintiff's Motion to Remand on November 22, 2023.  ECF Nos. 45 and 46.  Plaintiff declined to file a Reply.  Accordingly, all three motions are ripe for review; the Court addresses Builders Mutual's Motion to Dismiss and the Motion to Remand presently, and reserves analysis of the ACE Motion to Dismiss for a later opinion.

## III. LEGAL STANDARD

### A. Motion to Remand

"Subject matter jurisdiction is a threshold issue" which a court "must address before addressing the merits" of a claim.  *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999); *see Hendiazad v. Ocwen Loan Serv'g., LLC*, 828 F. App'x 923, 924 (4th Cir. 2020).  Without subject matter jurisdiction, "a court can only decide that it does not have jurisdiction."  *Burrell v. Bayer Corp.*, 918 F.3d 372, 379 (4th Cir. 2019).  Accordingly, "when faced with a motion to remand and a motion to dismiss, a court must first assess the motion to remand and may only consider the motion to dismiss if the court determines it has subject matter jurisdiction over the action."  *Santiago v. Pro. Foreclosure Corp. of Va.*, 2023 WL 6964746, at * 2 (citing *Burrell*, 918 F.3d at 379–80; *Hendiazad*, 828 F. App'x at 924; *Zhang v. Cigna Healthcare, Inc.*, 2023 WL 3727936, at *2 (E.D. Va. May 30, 2023)).

In every federal case, a plaintiff must also establish standing for an action to proceed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Standing is a jurisdictional issue courts consider independently.  *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 118 (4th Cir. 2004).  Standing requires a plaintiff to allege a concrete injury that is "actual or imminent, not

conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  Moreover, the injury has to be "fairly . . . trace[able] to the challenged action of the defendant," *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976), and it must be "likely" as opposed to merely "speculative" that the injury will be redressed by a "favorable decision," *id.* at 38, 43.

Even where standing and subject matter jurisdiction exist, a court may have discretion over whether to exercise jurisdiction.  Such is the case with actions for declaratory judgment.  *See Goodville Mut. Cas. Ins. Co. v. Doby*, 2020 WL 2602203, at *1 (E.D. Va. 2020).  The Declaratory Judgment Act gives district courts in "a case of actual controversy within its jurisdiction" discretion to decide whether to declare the rights of litigants.  28 U.S.C. § 2201.  In determining whether to exercise jurisdiction over a declaratory judgment action when a parallel state court proceeding is ongoing, courts must consider "federalism, efficiency, and comity."  *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).  Courts typically consider four factors—the "*Nautilus* factors"—when making this determination: "(1) the state's interest in having its own courts decide the issue; (2) the state court's ability to resolve the issues more efficiently than federal courts; (3) the potential for unnecessary entanglement between the state and federal courts based on overlapping issues of fact or law; and (4) whether the federal action is mere forum-shopping."  *Id.* (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376–77 (4th Cir. 1994)).  If the court finds that these factors weigh against exercising jurisdiction, the court will decline to hear the action.  *See Nautilus*, 15 F.3d at 376–77.

**B.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

**IV. DISCUSSION**

There are two motions presently before the Court: (1) Plaintiff's Motion to Remand, and (2) Builders Mutual's Motion to Dismiss. The Court will take these up in turn.

**A. Motion to Remand**

Plaintiff has moved to remand this action to state court on two main grounds. First, Plaintiff argues that, "[f]ollowing *Trustgard*, there is a 'serious constitutional question as to whether this Court has jurisdiction to hear this Declaratory Judgment Action because it concerns an insurance provider's duty to indemnify.'" Pl.'s Mem. Supp. Mot. Remand ("Mem. Supp. MTR") 6, ECF No. 39. Second, Plaintiff argues that the *Nautilus* factors weigh in favor of a remand. *See id.* at 7–11. In response, Builders Mutual and ACE (collectively, "Defendants") argue that *Trustgard* does not mandate abstention under these circumstances. *See* Builders Mutual's Mem. Opp'n Pl.'s Mot. Remand ("BM's Opp'n") 4–5, ECF No. 45; *see* BM's Opp'n 4–13; ACE's Resp. Opp'n Pl.'s Mot. Remand ("ACE's Opp'n") 10–14, ECF No. 46; *see* ACE's Opp'n at 10–14. Defendants also contend that the *Nautilus* factors do not counsel in favor of abstention. *See* BM's Opp'n 14–19; ACE's Opp'n 14–20. Ultimately, the Court agrees with Defendants and will deny Plaintiff's Motion to Remand.

1. *Trustgard* is Inapposite

Plaintiff's Motion to Remand relies, in part, on the Fourth Circuit's decision in *Trustgard Insurance Company v. Collins*. *See* Mem. Supp. MTR 6–7. In *Trustgard*, an automobile insurer sought declaratory judgment from a federal district court that it had no duty to indemnify a defendant in a personal injury action that was being litigated in state court. *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 202 (4th Cir. 2019). On appeal, the Fourth Circuit expressed concern over whether the insurer had standing to bring the declaratory judgment action and whether the case was ripe for review. *See id.* at 199–201. While grappling with these issues, the Fourth Circuit

noted that "suits about the duty to indemnify—unlike duty to defend suits—would ordinarily be advisory when the insured's liability remains undetermined." *Id.* at 200.  However, the Fourth Circuit ultimately declined to "resolve this constitutional question," and instead engaged in an analysis of the *Nautilus* factors before vacating and remanding the matter.  *Id.* at 201; *see id.* at 201–204.

Three years later, the Fourth Circuit briefly revisited the *Trustgard* decision, clarifying that "*Trustgard*'s discussion of ripeness bears only on duty-to-indemnify claims; duty-to-defend claims are expressly distinguished." *Liberty Mut. Fire Ins. Co. v. Sutton*, 2022 WL 11112589, at *5 (4th Cir. Oct. 19, 2022).  The Fourth Circuit continued, "under *Trustgard*'s reasoning, once a state court case is filed and an insured claims a defense, that claim—the duty to defend claim—becomes a concrete question, ripe for resolution." *Id.*  Finally, the *Sutton* court acknowledged that a party's duty to indemnify claim may "ripen[] along with its duty-to-defend claim" under certain circumstances. *Id.*  Specifically, if the relevant state's law provides that a finding of no duty-to-defend precludes a finding of a duty-to-indemnify, then the latter claim ripens along with the former. *See id.*  ("[U]nder North Carolina law, where there is no duty to defend, there can also be no duty to indemnify. . . .  Here, in other words, Liberty Mutual's duty-to-indemnify claim ripens along with its duty-to-defend claim, and its request for a declaratory judgment as to both presents a concrete question for the district court's resolution."); *see also Travelers Comm. Ins. Co. v. Jester*, 2022 WL 17751426, at *5 (W.D.N.C. Dec. 19, 2022) (denying *Trustgard* ripeness challenge where a party's duty-to-defend and duty-to-indemnify were both at issue).

Here, Plaintiff contends that remand is appropriate because *Trustgard* raises a "serious constitutional question" regarding whether federal courts have jurisdiction to hear duty-to-indemnify claims where, as here, an insured's liability has yet to be determined. Mem. Supp. MTR 6.  To be sure, this matter does indeed concern Builders Mutual's duty to indemnify.  *See* Am.

Compl. ¶ 82.  However, this matter *also* concerns Builders Mutual's alleged duty to defend.  *See id.*  In fact, in his Amended Complaint, Plaintiff explicitly requests that the Court "issue a declaratory judgment pursuant to Virginia Code § 8.01-184 that Builders [Mutual] provide *not only a defense but also insurance* for Mr. Smallwood's injuries as a third-party beneficiary to the Builders [Mutual] Policy."  *Id.* (emphasis added). And as outlined above, *Trustgard* explicitly cabined its concerns to duty-to-indemnify suits.  *See Trustgard*, 942 F.3d at 200 ("Suits about the duty to indemnify—*unlike the duty-to-defend suits*—would ordinarily be advisory when the insured's liability remains undetermined. . . .  [H]ere, we do not face any claim about Trustgard's duty to defend the . . . lawsuit.") (emphasis added).

A more proper case for comparison, then, is *Sutton*.  Just like the instant case, *Sutton* involved both duty-to-indemnify and duty-to-defend claims.  *See Sutton*, 2022 WL 11112589, at *5.  In *Sutton*, the Fourth Circuit held that the matter was ripe for adjudication because (1) the duty-to-defend claim was ripe, and (2) under state law, a finding of no duty to defend would necessarily mean that there was no duty to indemnify, thus rendering both claims ripe.  *See id.*

This case is legally indistinguishable from *Sutton*.  Here, as in *Sutton*, there are both duty-to-indemnify and duty-to-defend claims.  *See* Am. Compl. ¶ 82.  Given the very existence of the state and federal court proceedings in this matter, it is clear that the duty-to-defend claim has ripened.  *See Sutton*, 2022 WL 11112589, at *5.  Moreover, under Virginia law, if there is no duty to defend, there can be no duty to indemnify.  *See VEPCO v. Northbrook Prop. & Cas. Ins. Co.*, 475 S.E.2d 264, 265 (Va. 1996); *Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 101 (E.D. Va. 1989); *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 426–27 (E.D. Va. 2000).  Accordingly, Plaintiff's concurrent duty-to-indemnify claim "ripen[ed] along with [his] duty-to-defend claim."  *Sutton*, 2022 WL 11112589, at *5; *see also Travelers Comm. Ins. Co. v. Jester*, 2022 WL 17751426, at *5.  The concerns raised in *Trustgard* and relied upon by Plaintiff are

14

therefore inapposite and unpersuasive.  *See Sutton*, 2022 WL 11112589, at *5 ("*Trustgard*'s discussion of ripeness bears only on duty-to-indemnify claims; duty-to-defend claims are expressly distinguished. . . .  [And because the] duty-to-indemnify claim ripens along with [the] duty-to-defend claim, . . . [the] request for a declaratory judgment as to both presents a concrete question for the court's resolution.").

While *Trustgard* therefore fails to provide the panacea that Plaintiff hoped for, the inquiry does not end there.  The Court turns now to consider whether the *Nautilus* factors counsel in favor of remand.[11]

2.  The *Nautilus* Factors Do Not Favor Remand

As outlined above, the Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that district courts "may declare" the rights of interested parties.  28 U.S.C. § 2201(a).  This permissive language provides "discretionary authority to district courts to hear declaratory judgment cases."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998).  Importantly, "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions."  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *Centennial Life Ins. Co. v. Poston,* 88 F.3d 255, 256 (4th Cir. 1996); *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir. 1937).

---

[11] Plaintiff makes no explicit argument regarding whether and why its claim against ACE—a declaratory judgment claim for coverage under ACE's uninsured/underinsured motorist policy—should be remanded.  *See generally* Mem. Supp. MTR.  However, a *sua sponte* review of the relevant caselaw suggests that no jurisdictional barriers prevent the Court from hearing such a claim.  *See, e.g., Khattab v. Berkley Reg'l Ins. Co.*, 2023 WL 6890160, at *1–2 (4th Cir. Oct. 19, 2023) (affirming the district court's decision on a case that "solely turn[ed] on the legal question of what the relevant coverage limit under the insurance policy [was]"); *Moore v. Progressive Universal Ins. Co.*, 661 F. Supp. 3d 469, 475–80 (E.D. Va. Mar. 13, 2023) (determining the scope of uninsured/underinsured motorist coverage in a declaratory judgment action).  Further, it's not clear how Plaintiff would even have made such an argument while relying on *Trustgard*, given that *Trustgard* plainly did not consider a claim akin to what Plaintiff has lodged against ACE.  *See Trustgard*, 942 F.3d at 199–201.  Thus, the Court is satisfied that it likewise need not remand Plaintiff's claim against ACE pursuant to *Trustgard*.

The Fourth Circuit has explained that declaratory judgment actions are appropriate when the ultimate "judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Quarles*, 92 F.3d at 325.  That said, "whenever a parallel proceeding is pending in state court, district courts must also take into account 'considerations of federalism, efficiency, and comity.'" *United Capitol Ins. Co.*, 155 F.3d at 493 (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376–77 (4th Cir. 1994)).  To that end, the Fourth Circuit in *Nautilus* articulated four factors for consideration in balancing the state and federal interests when a parallel state action is pending:

> (1) [W]hether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Id.* at 493–94 (citing *Nautilus*, 15 F.3d at 377).  Finding that these factors ultimately do not weigh in favor of remand, the court will deny Plaintiff's Motion to Remand.

### a.  State Interest

The Court begins the *Nautilus* inquiry with the first factor—whether Virginia has a strong interest in having the issues decided in its own courts.  *See Nautilus*, 15 F.3d at 493.  Plaintiff argues that this factor weighs in favor of remand because this action does not involve a routine application of settled principles to disputed facts, but instead, "involves the application of unique and complicated facts to unsettled principles of insurance law, particularly with regard to the scope of using a vehicle."  Mem. Supp. MTR 8.  The Court disagrees.

Preliminarily, the fact that the underlying questions are governed by the substantive law of Virginia does not, alone, provide a reason "for declining to exercise federal jurisdiction." *Nautilus*, 15 F.3d at 493.  Instead, the discretion to abstain from deciding state-law questions within this

16

Court's jurisdiction "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Id.*; *see also Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984); *R.R. Comm'n of Tex. v. Pullman Co.*, 213 U.S. 496, 500 (1941). Such is simply not the case here.

Plaintiff's claims in this matter will entail analysis of the following issues[12]: (1) who qualifies as an insured(s) under a standard commercial general liability policy, (2) what constitutes "use" or "occupation" of a vehicle as a matter of Virginia law, (3) the scope of uninsured/underinsured motorist coverage as a matter of Virginia law, and (4) contract interpretation more generally. None of these categories of analysis present particularly difficult, complex, or unsettled questions of state law. Indeed, federal courts often tackle *precisely* such issues. *See, e.g., Moore v. Progressive Universal Ins. Co.*, 661 F. Supp. 3d 469, (E.D. Va. Mar. 13, 2023) (determining, in a declaratory judgment action, the scope of uninsured/underinsured motorist coverage pursuant to both an insurance contract and Virginia law); *Bray v. Ins. Co. of Pa.*, 917 F.3d 130, 132–34 (4th Cir. 1990) (interpreting the word "use" in accordance with Virginia law, and remanding to district court to "determine issues of primary and secondary [insurance] coverage," consistent with its opinion). And perhaps more importantly, the Virginia Supreme Court has frequently opined on the exact issues raised here, thus providing this Court with guidance. *See, e.g., Bratton Est. of Slone v. Selective Ins. Co. of Am.*, 290 Va. 314, 330 (2015) (collecting cases).

  *b. Efficiency*

The next *Nautilus* factor concerns whether the issues raised herein could be "more efficiently resolved in the courts in which the state actions are pending." *Nautilus*, 15 F.3d at 378. Plaintiff raises two main arguments—(1) the state courts handling related matters (Henrico and

---

[12] For the purposes of this inquiry, the Court combines Plaintiff's claims against both Builders Mutual and ACE.

Chesterfield Circuit Courts) have already expended considerable time and resources familiarizing themselves with this matter, Mem. Supp. MTR 9, and (2) in light of *Trustgard*, jurisdictional concerns "will continue to lurk in the background" if this matter is not remanded. *Id.* Both arguments are unavailing.

Plaintiff's first argument is undermined by the very fact that the parties *voluntarily stayed* the state personal injury proceedings "until such time as this Complaint for Declaratory Judgment is resolved." *See* Am. Compl. ¶ 48. Under such circumstances, it's not clear why remanding a separate declaratory judgment action would generate any boost in efficiency. *See Nationwide Mut. Ins. Co. v. 1400 Hampton Blvd., LLC,* 2010 WL 5525078, at *4 (E.D. Va. Dec. 2, 2010) ("[T]he fact that the state action is stayed pending a decision on these insurance coverage questions demonstrates that there are no efficiency concerns involving timing issues with the underlying liability trial."), *report and recommendation adopted*, 2010 WL 5478614 (E.D. Va. Dec. 30, 2010). Additionally, the prompt removal of this matter suggests that this Court has substantially more familiarity with the specific issues raised herein than the Henrico Circuit Court does. In fact, ACE was not even a party to this action until *after* the case was removed. The Court is therefore hard-pressed to see how any gain in efficiency would result from remand.

Finally, Plaintiff's *Trustgard*-based efficiency argument fails for essentially the same reasons outlined *supra*. That is, the ripeness and standing related concerns voiced in *Trustgard* pertained *only* to duty to indemnify actions. *See Trustgard* 942 F.3d at 200. This suit, unlike *Trustgard*, involves a duty-to-indemnify claim, a duty-to-defend claim, and a claim related to the applicability of uninsured/underinsured motorist coverage under an insurance policy. *See* Am. Compl. ¶¶ 82, 92. Thus, even if *Trustgard* required remand of duty-to-indemnify suits—which it plainly does not, *see Trustgard*, 942 F.3d at 199–201—this suit falls outside its scope. *See Sutton*,

2022 WL 11112589, at *5 (acknowledging federal court jurisdiction over a case involving both a duty-to-indemnify and a duty-to-defend claim).

### c. Overlapping Issues and Entanglement

The third *Nautilus* factor requires the Court to examine "whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts." *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Kapiloff*, 155 F.3d at 493–94). "The importance of this factor rests in the fact that 'if the federal court reached the final judgment before the state court, its resolution of those common issues might be entitled to preclusive effect in the state action.'" *Auto-Owners Ins. Co. v. Waters*, 2009 WL 3378657, at *5 (E.D. Va. Oct. 20, 2009) (quoting *Nautilus*, 15 F.3d at 377).

On this issue, Plaintiff argues that "there is not just one parallel state proceeding, but two." Mem. Supp. MTR 10. Plaintiff continues, "[t]here is a strong possibility that the trajectory of this [action] will be affected by the findings and outcomes of the Underlying Personal Injury Action and the Broker Liability Action because the facts and issues in each of these cases are interconnected." *Id.*; *see also id.* (noting that the discovery in and outcomes of the state actions will shed light on issues relevant to this matter). In response, Defendants argue that (1) there are not any factual issues to actually be determined in this case, particularly since the parallel state proceedings have been stayed, *see* BM's Mem. Opp'n 16–17, and (2) the determinations to be made in this matter are strictly legal, and do not overlap with the determinations to be made in state court. *Id.*; ACE's Mem. Opp'n 15.

In view of this matter's procedural posture, as well as the posture of the parallel state proceedings, the Court finds this factor does not favor remand. First, as Builders Mutual noted, there are essentially no factual issues to be determined in this matter. *See* BM's Mem. Opp'n 16. Rather, resolution of this matter strictly involves legal determinations regarding the construction

of certain policy terms.  *See* Am. Compl. ¶¶ 82, 92.  Moreover, because the personal injury matter in state court has been stayed until this declaratory relief matter is resolved, "this concern is no longer warranted."  *1400 Hampton Blvd.*, 2010 WL 5525078, at *4.  The Court also notes that there is no parallel state proceeding against ACE, rendering this factor wholly irrelevant as to them. Plainly, "this is not a case where many of the issues of law and fact sought to be adjudicated in the federal declaratory action are already being litigated by the same parties in the related state court actions." *Nautilus*, 15 F.3d at 379.  Instead, a handful of narrow legal issues are being litigated in front of this Court.  The proceedings in state court, on the other hand, are either (1) stayed, rendering this factor irrelevant, or (2) sufficiently unrelated, such that this factor does not favor remand.  *See id.*; *1400 Hampton Blvd.*, 2010 WL 5525078, at *4.

### d.  Procedural Fencing

Finally, when considering the fourth *Nautilus* factor, courts must first assess whether the case was one that had been "raced to federal court in an effort to get certain issues that are already pending before the state court resolved first in a more favorable forum," i.e., forum shopping. *Nautilus*, 15 F.3d at 380.  Next, courts must consider whether there is any indication that the case was filed "to achieve a federal hearing in a case otherwise *not removable*."  *Id.* at 377 (emphasis added).

Plaintiff's only argument on this factor is that "Builders Mutual chose to remove this [action] from the Henrico . . . Circuit Court[, which] indicates that Builders Mutual is seeking a more sympathetic forum." Mem. Supp. MTR 11.  However, as noted by Builders Mutual, Plaintiff has presented no evidence that Builders Mutual "raced to the federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Nautilus*, 15 F.3d at 380.  The parties stayed the underlying personal injury action, pending a determination of coverage under the Policy in this declaratory judgment action, a fact that refutes

20

any argument that Builders Mutual sought to have this Court reach its determination ahead of pending deliberations by the state court.  It is difficult to argue that Builders Mutual "raced to the courthouse" for a coverage determination when the parties explicitly agreed to stay the underlying action, and when Plaintiff initiated the declaratory judgment proceedings (albeit in state court) to begin with.

The Court also notes that the language in *Nautilus* suggests that mere removal of a state court declaratory judgment action, without more, does not constitute "procedural fencing."  In *Nautilus*, the Fourth Circuit expressly stated that procedural fencing occurs where a party seeks, via a declaratory judgment action, "to achieve a federal hearing in a case *otherwise not removable*." *Id.* at 377.  However, where—as here—the plaintiff is the one who brings the declaratory judgment action and the defendant merely removes such action, this concern is not implicated.  *See id; Trigo v. Travelers Comm. Ins. Co.*, 2010 WL 3521759, at *10 (noting that, without actual evidence of forum shopping, a defendant's "valid and timely removal constitutes a legitimate exercise of its right to remove a state court action to federal court, and does not constitute 'procedural fencing' for purposes of the *Nautilus* factors.").  Here, Plaintiff lodges an unsupported assertion that Builders Mutual's removal of this action indicates that it is "seeking a more sympathetic forum." Mem. Supp. MTR 11.  Such is simply not enough to establish the sort of procedural fencing that *Nautilus* and its progeny seek to discourage.  *See Nautilus*, 15 F.3d at 377, 380; *Trigo*, 2010 WL 3521759, at *10; *Hall v. Travelers Cas. Ins. Co. Am.*, 2016 WL 9223923, at *6 (finding that the fourth *Nautilus* prong did not favor remand where the plaintiff "fail[ed] to allege facts to support [his] conclusion" that the defendant removed the action because it believed that matter was better suited for adjudication in federal court).

Finally, the procedural posture of this matter and the timing of this motion also cut against any sort of procedural fencing argument.  As already noted, it was Plaintiff who initially brought

this declaratory judgment action in state court.  In doing so, Plaintiff implicitly and correctly acknowledged that a declaratory action concerning Builders Mutual's alleged duty to defend and indemnify was a sufficiently distinct matter appropriate for a separate proceeding.  *See, e.g., Nautilus*, 15 F.3d at 380 (noting that an action to obtain "prompt resolution of a dispute over a liability insurer's obligation to defend and indemnify its insured against certain tort claims then being pressed against it in state court" is sufficiently "separate and independent" from the ongoing litigation in state court).  Additionally, this matter had been pending in federal court for *nearly a year* before Plaintiff filed the instant Motion to Remand.  Plaintiff presumably had no issues with federal court jurisdiction when he amended his Complaint to note that "there is an actual controversy ripe for adjudication regarding the CGL policy issued to Williams [Contracting] by Builders [Mutual]."  Am. Compl.  ¶ 82.  If the concerns raised by Plaintiff are truly jurisdictional in nature, it seems they could and should have been raised at an earlier stage.

> ### e. Summary

Courts in the Fourth Circuit commonly utilize declaratory judgment actions to "resolve disputes over liability insurance coverage, even in advance of judgment against the insured on the underlying claim for which coverage is sought."  *Nautilus*, 15 F.3d at 376–76.  A review of the *Nautilus* factors reveals no reason to stray from this standard practice.  Accordingly, the Court will deny Plaintiff's Motion to Remand and retain jurisdiction over this matter.

## B.  Builders Mutual's Motion to Dismiss

Having dealt with Plaintiff's jurisdictional concerns, the Court turns now to Builders Mutual's Motion to Dismiss.[13]  Builders Mutual argues that "there is no coverage under the Policy

---

[13] For this portion of the opinion, the Court reiterates that it "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  The Court is not, however, required to accept any unreasonable inferences or Plaintiff's legal conclusions.  *Id.*  The Court will also consider any documents attached or integral to Plaintiff's Complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

. . . for the injuries that are the subject of [*Smallwood I*,] notwithstanding the existence of a Certificate of Insurance . . . purporting to identify . . . VA Express Holdings, LLC, BD JV, Kelley [& Associates,] and [DJ LLC] as additional insureds."   Builders Mutual's Mem. Supp. Mot. Dismiss ("Mem. Supp.") 2, ECF No. 19.   Builders Mutual also contends that the alleged partnership between BD JV and Williams Contracting does not constitute a "work contract," foreclosing that path to coverage as well.   *See id.*   In response, Plaintiff contends that certain provisions of the Policy—such as those pertaining to blanket coverage and additional insureds— do indeed entitle him to coverage.   *See* Pl.'s Mem. Opp'n Mot. Dismiss ("Mem. Opp'n") 5–13, ECF No. 21.   Plaintiff also argues that the Policy itself is ambiguous, and that the Court should consider extrinsic evidence in its analysis of the Policy.   *See id.* at 12–14.   While Plaintiff makes creative arguments to the contrary, the Court ultimately finds that that Plaintiff is not entitled to coverage under the Policy.

    1. <u>Insurance Contract Interpretation</u>

    Before analyzing the Policy itself, a brief outline of the relevant legal principles is in order. To begin with, "[a] federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state." *Phila. Indem. Ins. Co. v. Associated Univs., Inc.*, 2021 WL 4484556, at \*5 (W.D. Va. Sept. 29, 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Here, the forum state is Virginia, and "[i]n insurance coverage disputes, the general rule in Virginia is that 'the law of the place where an insurance contract is written and delivered controls issues as to its coverage.'" *Id*. (citation omitted).   Here, the Policy was formed and issued in Virginia, and the parties do not dispute the application of Virginia law.   *See* Mem. Supp. 10 n.4; Mem. Opp'n 11.   Virginia, in turn, has adopted the Eight Corners Rule under which the Court may "look primarily at the underlying complaints and the insurance policy to determine if there is a potential for coverage." *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir.

2009); *Am. Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465 (E.D. Va. 2002) ("[T]he 'eight corners rule' requires review of '(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy.'").

The Supreme Court of Virginia has also held that "when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Barber v. VistaRMS, Inc.*, 272 Va. 319, 329 (2006). In the same vein, courts are to "interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *TravCo Ins. Co. v. Ward*, 284 Va. 547, 552 (2012). Importantly, "courts must not strain to find ambiguities . . . or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (collecting Supreme Court of Virginia decisions). Rather, each phrase and clause of an insurance contract "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein." *Suggs v. Life Ins. Co. of Va.*, 207 Va. 7, 11 (1966)*.* Ambiguity will only arise where "[a] reasonable or fairly claimed interpretation is one of two competing interpretations that are *equally possible* given the *text and context* of the disputed provision." *Erie Ins. Exch. v. EPC MD 15, LLC*, 297 Va. 21, 29 (2019) (emphasis added). The mere fact that "a word has more than one definition or a party can 'hypothesize' about another interpretation does not render a policy provision ambiguous." *Midlothian Enters., Inc. v. Owners Ins. Co.*, 439 F. Supp. 3d 737 (E.D. Va. 2020) (quoting *Erie Ins. Exch.*, 297 Va. at 27–28).

2. Plaintiff is Not Covered Under the Unambiguous Language of the Policy

With these guiding principles in mind, the Court returns to the parties' arguments. Builders Mutual first contends that neither Plaintiff "nor any other purported 'insureds' identified by

24

[Plaintiff] actually qualify as [insureds] under the WHO IS AN INSURED Section of the Policy." Mem. Supp. 13.  Builders Mutual next argues that the "work contract" provision of the Policy's Additional Insured Endorsement does not qualify Plaintiff (or any other purported insureds) for coverage under the Policy.  *See id.* at 14–15.  Builders Mutual also argues that the Certificate of Insurance relied upon by Plaintiff does not "create coverage under the [P]olicy," because "it is issued 'as a matter of information only,'" and does not substantively impact the coverage provided by the Policy.  *Id.* at 16–17.  Finally, Builders Mutual argues that the other provisions relied upon by Plaintiff—i.e., the blanket coverage and additional insured provisions—do not provide coverage because they are either (1) entirely irrelevant, or (2) simply do not provide the coverage Plaintiff claims they do.  *See* Reply Supp. Mot. Dismiss ("Reply") 2–4, ECF No. 22.

Plaintiff responds that Builders Mutual ignores certain endorsements and definitions contained in the Policy, which operate to provide coverage to Kelley & Associates and BD JV, and, in turn, to Plaintiff.  *See id.* at 5–10.  While it's not clear exactly how Plaintiff arrives at such a conclusion, the argument appears to go something like this:

> BD JV was a joint venture between Kelley & Associates and DJ LLC.  *Id.* at 9;
>
> BD JV's obligations included insuring its assets against loss "where reasonable and standard practice in the industry," and that "*the [V]enture may acquire insurance on behalf of any Member, employee, agent or other Person engaged in the business interest of the Venture against any liability asserted against them or incurred by them while acting in good faith on behalf of the Venture*," *Id.* at 2, 9 (emphasis in original);
>
> BD JV then entered a Partnership Agreement with Williams Contracting.  *Id.* at 8;
>
> The BD JV/Williams Contracting Partnership Agreement is a "work contract or written agreement whose terms require Williams [Contracting] . . . to obtain *Builders Risk Insurance and other responsibilities as required*."  *Id.* at 9.  Those "*other responsibilities as required*" included obtaining CGL insurance.  *Id.* at 9;
>
> Williams Contracting did in fact obtain such insurance from Builders Mutual, which, through the BD JV/Williams Contracting partnership, covers Plaintiff's injuries.  *See id.* at 6–10.

Plaintiff also argues that the Policy is an ambiguous "'daisy chain' of contradictions." *Id.* at 12. Plaintiff thus urges the Court to "analyze extrinsic evidence to determine the meaning of the disputed terms." *Id.* at 13.

In view of the above, there are essentially two main issues:  (1) whether the Policy is ambiguous, and (2) whether the Policy provides the coverage Plaintiff seeks.  Applying the contract interpretation principles outlined above, the Court answers both questions in the negative.

### a. The Policy Is Not Ambiguous

Here, Plaintiff summarily argues that the Policy is "so complicated, and layered with competing definitions, exclusions, and enhancements, [such that] it is confusing and unclear on its face."  Mem. Opp'n 12.  In support of this contention, Plaintiff vaguely argues that certain endorsements and provisions can reasonably be read to broaden the Policy.  *See id.*  Unfortunately for Plaintiff, his arguments miss the mark.

Preliminarily—and perhaps most importantly—Plaintiff does not identify any *specific language* in the Policy that is supposedly ambiguous.  Instead, Plaintiff seemingly argues that the Policy as a whole is ambiguous because of "competing definitions, exclusions, and enhancements" that render it "unclear on its face."  *Id.*  Such allegations are simply insufficient to establish ambiguity.  *See, e.g., Erie Ins. Exch.*, 297 Va. at 29 (noting that ambiguity arises where "[a] fair or reasonably claimed interpretation is one of two competing interpretations that are equally possible given the text and context of the *disputed provision*") (emphasis added).  Indeed, in every case this Court has reviewed, the party asserting an ambiguity challenge contended that some specific language or policy provision was ambiguous.  *See, e.g., TravCo Ins. Co. v. Ward*, 284 Va. 547, 551–62 (2012); *Hanover Ins. Co. v. Castle Hill Studios, LLC*, 401 F. Supp. 3d 733, 737–42 (W.D. Va. 2019); *Midlothian Enters., Inc.*, 439 F. Supp. 3d at 741-42; *Atlantic Specialty Ins. Co. v. Bindea*, 632 F. Supp. 3d 681, 699–701 (W.D. Va. 2022).  Without such a specific "disputed

provision," the Court will not "strain to find ambiguities" in the Policy at large. *Res. Bankshares Corp.*, 407 F.3d at 636; *see also Khattab v. Berkley Reg'l Ins. Co.*, 598 F. Supp. 3d 386, 395 (E.D. Va. 2022) ("The Court recognizes what is at stake . . . however, the Court will not . . . read ambiguity into a contract where the plain meaning can be ascertained.")

To the extent Plaintiff does make passing reference to specific terms and provisions—i.e., certain endorsements and definitions in the Policy pertaining to additional insureds and employees—he merely contends that one could reasonably reach a conclusion different than that reached by Builders Mutual. Mem. Opp'n 12. However, the Virginia Supreme Court has clearly held that "provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel Wip Lease Corp. v. Saunders,* 276 Va. 509, 516 (2008); *see also Adorn Barber & Beauty LLC v. Twin City Fire Ins. Co.*, 2021 WL 4851062, at *6 (E.D. Va. Oct. 18, 2021) (quoting *Nextel Wip*). Likewise, the mere fact that a "word has more than one definition or a party can 'hypothesize' about another interpretation does not render a policy provision ambiguous." *Midlothian Enters., Inc.*, 439 F. Supp. 3d at 741 (citing *Erie Ins. Exch.*, 297 Va. at 29). Without more, Plaintiff's conclusory claims that these provisions are ambiguous must therefore fail.

At bottom, Plaintiff is asking the Court to do precisely what caselaw instructs it *not* to do— "myopically focus on a word here or a phrase there" to find contractual ambiguity. *Erie Ins. Exch.*, 297 Va. at 28; *see Erie Ins. Exch.*, 297 Va. at 27–28. The Court declines to do so, and will instead analyze the relevant terms "in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement." *Id.* at 28. This method will ensure that the relevant policy provisions are "considered and construed together," with any "seemingly conflicting provisions harmonized when that can reasonably be done, so as to effectuate the intentions of the parties." *Suggs*, 207 Va. at 11. As discussed *infra*, such an analysis solidifies

both that the Policy contains no ambiguities, and that it does not provide Plaintiff with the coverage he seeks.

### b. The Policy Does Not Provide the Coverage Plaintiff Seeks

As outlined above, Plaintiff constructs a somewhat complicated argument in support of his entitlement to coverage under the Policy. *See* Mem. Opp'n 4–12. In response, Defendant characterizes Plaintiff's argument as a "daisy chain of propositions involving the WHO IS INSURED LANGUAGE," and contends that Plaintiff fails to actually prove any of the purported insureds are entitled to coverage under the Policy. Mem. Supp. 12. A thorough review of the Policy language ultimately supports Defendant's position.

### i. Plaintiff is Not a "Named Insured" Under the Policy

Beginning with the preamble language of the COMMERCIAL GENERAL LIABILITY COVERAGE FORM, the Policy states that "the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Builders Mutual Pol'y 138. Only Williams Contracting is identified as a Named Insured in the Policy Declarations. *Id.* at 8. Indeed, Williams Contracting is the only "Named Insured" identified throughout the entire policy. *See generally id.*[14] The preamble also goes on to note that "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who Is An Insured." *Id.* Thus, to qualify as an insured without being identified in the Declarations as a *named* insured, Plaintiff would need to be otherwise qualified as such via the "Who Is An Insured" provisions of the Policy. *See id.* at 138. The Court turns now to these provisions.

---

[14] Because Williams Contracting is the only "Named Insured" in the Declarations, the Court will insert "Williams Contracting" wherever "you" or "your" appears in text excerpted from the Policy.

The "Who Is An Insured" provisions open by outlining the coverage provided to those identified as "Named Insureds" in the Policy Declarations—i.e., Williams Contracting[15]:

> If [Williams Contracting] are designated in the Declarations as: . . . [d] An organization other than a partnership, joint venture, or limited liability company, [Williams Contracting] are an ensured.   [Williams Contracting's] "executive officers" and directors are insureds, but only with respect to their duties as [Williams Contracting's] officers or directors.   [Williams Contracting's] stockholders are also insureds, but only with respect to their liability as stockholders.

*Id.* at 146.  A review of Plaintiff's allegations confirms that neither Plaintiff nor any of the other purported insureds fall within the groups identified by this policy provision.  *See* Am. Compl. ¶¶ 4–13, 51–82.

The final sentence of the "Who Is An Insured" section further drives home the point that neither Plaintiff nor the other purported insureds are entitled to coverage under the Policy.  *See* Builders Mutual Pol'y 147.  That sentence reads,  "[n]o person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations."  *Id.*  Accordingly, BD JV and its component entities could not have become insureds merely by way of BD JV's partnership with Williams Contracting.  *See id.*  Instead, BD JV and/or the other purportedly insured entities or individuals would have had to be expressly identified as "Named Insureds" in the Declarations. Their omission from the Declarations is essentially fatal to Plaintiff's claim for coverage.

### *ii. Plaintiff's Alternative Arguments for Coverage Are Unavailing*

Perhaps sensing the facial difficulties with his claim, Plaintiff argues that several other Policy provisions provide coverage under these circumstances.  For instance, Plaintiff contends

---

[15] Because (1) Williams Contracting is the only "Named Insured" in the Declarations, *see* Builders Mutual Pol'y 8, and (2) Williams Contracting is explicitly identified in the Declarations as a corporation, *id.*, section 1(d) of the "Who Is An Insured" section—which pertains to corporations—is the subsection applicable to Williams Contracting.  *See id.* at 146–47.

that he is entitled to coverage pursuant to the "work contract" provisions of the ADDITIONAL INSURED ENDORSEMENT. *See* Mem. Opp'n 7–9. That Endorsement designates the following as additional insureds:

> Any person or organization other than an architect, engineer or surveyor, which requires in a "work contract" that such person or organization be made an insured under this policy. However, such person or organization shall be an insured only with respect to covered "bodily injury", "property damage", "personal and advertising injury" caused, in whole or in part, by: [a] [Williams Contracting's] acts or omissions; or [b] The acts or omissions of those acting on [Williams Contracting's] behalf; in the performance of [Williams Contracting's] ongoing operations for the additional insured(s) only at the location designated by the "work contract"[.]

Builders Mutual Pol'y 39. "Work contract," in turn, is defined as "a written agreement into which [Williams Contracting] enter[s] for work performed by [Williams Contracting] or on [Williams Contracting's] behalf. *Id.* This language therefore extends coverage when there is (1) a *written agreement* between Williams Contracting and a person/organization that (2) "requires . . . that such person or organization be made an insured under" the Policy. *Id.*

Here, the only two written agreements other than the Policy itself are the Partnership Agreement between Williams Contracting and BD JV and the Joint Venture Agreement between Kelley & Associates and DJ LLC. Am. Compl. ¶¶ 52–56. The Joint Venture Agreement is irrelevant, because the definition of "work contract" requires Williams Contracting to be a party to such a contract for these provisions to apply. Builders Mutual Pol'y 39. Thus, for Plaintiff or the other purported insureds to be covered under the Policy's work contract provision, the Partnership Agreement would need to (1) definitionally qualify as a "work contract" under the Policy, and (2) "require . . . that [the purported insureds] be made . . . insured[s] under this [P]olicy." *Id.* Assuming *arguendo* that the Partnership Agreement even *qualifies* as a "work contract," it certainly did not require that the purported insureds be made insureds under the Policy.

The Partnership Agreement is a fairly short document—roughly five-and-a-half pages—that includes a succinct recitation of the respective duties of Williams Contracting and BD JV[16]:

| Member | Duties Description |
|---|---|
| BD Mechanicsville, JV | Responsible for project management, construction management and on-site supervision and other responsibilities as required. |
| Williams Construction, Inc | Responsible for maintaining Virginia Contractor License, __2701018734A__, Builders Risk Insurance and other responsibilities as required, ALL FEES TO BE PAID BY BD Suffolk, JV |

Partnership Agreement 2.[17]  As the above language reveals, there is nothing in the Partnership Agreement that "requires . . . that [the purported insureds] be made . . . insureds" under the Policy. Builders Mutual Pol'y 39; *see id.*  Instead, the Partnership Agreement requires only that Williams Contracting (1) maintain Virginia Contractor License 2701018734A, (2) maintain *Builders Risk* Insurance, and (3) other responsibilities as required.  Importantly, "Builders Risk Insurance" is different in kind than the Commercial General Liability insurance provided by the Policy.  *See Nationwide Prop. & Cas. v. Comer*, 2007 WL 3088072, at *3 (S.D.W. Va. Oct. 22, 2007) (acknowledging that builders risk policies insure the work or workmanship with which a contractor or builder performs, whereas commercial general liability policies insure personal injury or property damage arising *out of* the work).  The "Builders Risk Insurance" language in the Partnership Agreement therefore did not require Williams Contracting to make BD JV an insured under the Policy.

---

[16] The Partnership Agreement also contains provisions pertaining to, *inter alia*, the partnership's purpose, term, place of business, fiscal year, profit and loss splits, arbitration, dissolution, and other miscellaneous topics.  *See* Partnership Agreement 1–6.

[17] The Court notes that the identification of "Williams Construction" in this portion of the Partnership Agreement appears to be a typographical error.  Partnership Agreement 2.  Based on the remainder of the document, it is clear that the Agreement is between BD JV and Williams *Contracting*, and no entity named Williams Construction, Inc. is in fact involved.  *See, e.g.,* Partnership Agreement 1, 6.

Undeterred, Plaintiff instead attempts to stretch the "other responsibilities as required" language far beyond its actual terms to argue that "other responsibilities as required" necessarily "included CGL insurance." Mem. Opp'n 9. This approach faces two main pitfalls. First, Plaintiff cites nothing other than the Partnership Agreement itself in support of this contention. *See id.* With nothing more, it is difficult to see how "other responsibilities as required" can plausibly be construed to include obtaining Commercial General Liability Insurance, particularly when the rest of Williams Contracting's duties—including those pertaining to insurance—are explicitly spelled out in the very same sentence. *See* Partnership Agreement 2. Secondly, BD JV's duties likewise include the "other responsibilities as required" language. *Id.* The Court is not inclined to read an implied duty for Williams Contracting into the Partnership Agreement when such a duty could similarly be read into the identical language in BD JV's listed duties. Therefore, even assuming that the Partnership Agreement is a "work contract," Plaintiff's argument still fails because there is simply no language in the Partnership Agreement *expressly* requiring that BD JV be made an insured under *this* Policy. *See* Builders Mutual Pol'y 39; Partnership Agreement 2.

Plaintiff's remaining arguments fare no better. For instance, Plaintiff briefly mentions that BD JV, among others, was included as an Additional Insured on the Certificate of Insurance ("COI") issued by Brown & Brown Insurance Agency of Virginia to VA Express Holdings, LLC. *See* Am. Compl. ¶ 57; Mem. Opp'n 3–5. However, the COI expressly provides that "if the Certificate Holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed." Certificate of Insurance 32. The COI also discloses that it "is issued as a matter of information only and confers no rights on the certificate holder . . . [and] does not amend, extend, or alter the coverage reported by the policies described below." *Id.* The COI is therefore irrelevant for the purposes of determining entitlement to coverage because (1) BD JV and the other entities listed in the COI did

not actually *endorse* the Policy as additional insureds, and (2) the COI cannot alter the scope of coverage.  Certificate of Insurance 32.

Finally, Plaintiff references a few scattered provisions within the Policy to support his claim that he is entitled to coverage.  However, these provisions either do not support Plaintiff's argument or are patently irrelevant.  For instance, Plaintiff references the definition of the term "employee" from a form applicable only to the Commercial *Property* coverage under the Policy. *See* Mem. Opp'n 8.  This reference is irrelevant because it is the Commercial General Liability coverage at issue here, not Commercial Property coverage.  At another point in his briefing, Plaintiff omits a preamble to the summary section he relies upon; that preamble provides that "[n]o coverage is provided by this summary nor can it be construed to replace any provision of your policy.  If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL."  Mem. Opp'n Ex. 4 ("Builders Mutual Pol'y Additional Endorsements") 60, ECF No. 21-4.  Accordingly, the Court need only consider the *actual* policy provisions, which it has done.

Plaintiff last references certain provisions pertaining to Blanket Additional Insured coverage.  *See* Mem. Opp'n 7–8.  However, coverage under those provisions is limited to "liability for 'bodily injury' or 'property damage' caused by 'your work' performed for that additional insured and included in the products-completed operation hazard."  Builders Mutual Pol'y Additional Endorsements 35.  In turn, "products-completed operations hazard" includes "all 'bodily injury' and property damage occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: . . . [w]ork that has not yet been completed or abandoned." *Id.* at 169.  Putting this all together reveals that the provision cited by Plaintiff only applies to work that has been completed.  *See id.*  And the record reflects that on the date of the incident, any such work had not yet been completed or abandoned.  *See* Am. Compl. ¶¶ 17–43.

Indeed, Plaintiff was injured while working on the construction of the Express Oil Change. *See id.* Thus, even assuming this provision applies to the work undertaken by Plaintiff *generally*, it would not cover the injuries he sustained.

In sum, the unambiguous language of the Policy reveals that Builders Mutual is not required to provide a defense or insurance with respect to Plaintiff's injuries. Such is the case because the relevant Policy provisions clearly establish that (1) Plaintiff is not a named insured, and (2) the additional insured provisions do not otherwise entitle Plaintiff to the sort of coverage he seeks. And despite Plaintiff's claims to the contrary, the Policy is not so ambiguous or contradictory as to require consideration of extrinsic evidence. Instead, when considered and construed together, the Policy provisions paint a clear picture of what is and is not covered by the Policy. While Plaintiff's injuries are certainly unfortunate, they ultimately fall in the "not covered" category.

## V. CONCLUSION

For the reasons detailed above, Plaintiff's Motion to Remand (ECF No. 38) will be denied, and Builders Mutual's Motion to Dismiss (ECF No. 18) will be granted.

An appropriate Order shall issue.

/s/ _____
Roderick C. Young
United States District Judge

Richmond Virginia
Date: February 28, 2024

34